[Cite as *State v. Christian*, 2020-Ohio-3816.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27236 |
| | : | |
| v. | : | Trial Court Case No. 2011-CR-563 |
| | : | |
| EVA CHRISTIAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of July, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BROCK SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before us on remand from the Ohio Supreme Court, which recently reversed our decision in *State v. Christian*, 99 N.E.3d 887, 2017-Ohio-8249 (2d Dist.) (hereinafter "*Christian III*"). The Supreme Court has directed us to now address defendant-appellant Eva Christian's sole assignment of error, which we had found to be moot based upon our holding in *Christian III*. *See State v. Christian,* Ohio Slip Opinion No. 2020-Ohio-828, __ N.E.3d __.

{¶ 2} In 2009, Christian set in motion a plan for committing insurance fraud related to policies on her home and a restaurant she owned. We set forth the history of the case in *State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672 ("*Christian I*") and repeat it herein in pertinent part:

In March 2011, Christian was indicted as follows: Count One, insurance fraud (related to her home), in an amount greater than or equal to $5,000 but less than $100,000; Count Two, insurance fraud (related to the restaurant), in an amount greater than $100,000; Count Three, making false alarm (related to the burglary at her home), resulting in economic harm of more than $5,000 but less than $100,000; and Count Four, making false alarm (related to the vandalism and fire at the restaurant), with economic harm of $500 or more but less than $5,000. In June 2011, an additional count of engaging in a pattern of corrupt activity (Count Five) was added by a separate indictment. Christian filed a motion to suppress evidence, which was overruled following a hearing. The matter was tried to a jury over several days in May 2012. The jury found Christian guilty on all counts.

The trial court sentenced Christian to 18 months and 36 months,

respectively, on counts one and two of insurance fraud; it sentenced her to 18 and 12 months, respectively, on counts three and four, making false alarms. The court sentenced Christian to nine years on the count of engaging in a pattern of corrupt activity. The court ordered that counts one through four were to be served consecutively to each other but concurrently with count five, for an aggregate term of nine years. The trial court ordered Christian to pay restitution as follows: $51,751.96 to Cincinnati Insurance, $21,485.29 to Erie Insurance; $8,647.33 to the Montgomery County Sheriff's Department; and $2,748.77 to the Miami Township Fire Department. The court also ordered Christian to pay court costs and to forfeit her house, due to its use in her offense of engaging in a pattern of corrupt activity. It informed Christian that she would be subject to post-release control for five years on Count Five and that she may be subject to post-release control for three years on all of the other offenses.

*Id.* at ¶ 21-22.

{¶ 3} In *Christian I*, we reversed Christian's conviction for engaging in a pattern of corrupt activity. Additionally, we modified Christian's convictions for insurance fraud (Count II) and making false alarms (Count III) to reflect lower degrees of the offenses pursuant to 2011 Am. Sub. H.B. No. 86. Thereafter, we remanded the matter to the trial court for resentencing on Counts II and III. The State appealed our decision to the Ohio Supreme Court, which reversed and remanded on the basis of its decision in *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. *State v. Christian*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888.

{¶ 4} On remand, in *State v. Christian*, 2016-Ohio-516, 56 N.E.3d 391 (2d Dist.) ( "*Christian II*"), we stated:

> In our prior Opinion [*Christian I*], we reversed Christian's conviction for engaging in a pattern of corrupt activity, finding that it was supported by insufficient evidence. Specifically, we held that there was insufficient evidence that Christian had engaged in an "enterprise" with the two individuals who helped her stage the events that gave rise to her convictions for insurance fraud; the existence of such an "enterprise" is one element of the offense of engaging in a pattern of corrupt activity. We relied on our holding in *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, which held that, in order to establish the "enterprise," there must be some evidence of "(1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity." *Christian* at ¶ 74, quoting *Beverly* at ¶ 26. We found that the "structure" of the efforts of Christian and her associates did not go beyond Christian's efforts to stage crimes to defraud her insurance companies, and thus that the organization did not have "a structure separate and apart, or distinct, from the pattern of corrupt activity." *Christian* at ¶ 76-79.
>
> The State appealed from our judgment reversing Christian's conviction for engaging in a pattern of corrupt activity. The State also asked us to certify a conflict between our holding and several holdings of other courts of appeals, and we did certify that *Christian* was in conflict with

one of those cases. *State v. Christian*, 2d Dist. Montgomery No. 25256, Decision & Entry, August 24, 2014.

The Supreme Court accepted the case on both the State's appeal and the certified question. * * *

Our case, *State v. Beverly*, which presented an identical legal question about the evidence required to prove an "enterprise," was also pending before the Supreme Court at that time. *Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, accepted for review, 11/20/2013 Case Announcements, 137 Ohio St.3d 1414, 2013-Ohio-5096, 998 N.E.2d 512. The Court held *Christian* for its decision in *Beverly*.

The Supreme Court decided *Beverly* in January 2015. *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. It held that "[n]othing in R.C. Chapter 2923 [which includes R.C. 2923.32, defining the offense of engaging in a pattern of corrupt activity] implicitly or explicitly states that an enterprise and a pattern of corrupt activity must be proven with separate evidence." *Id*. at ¶ 8. The court further stated that, with respect to proof of the existence of an enterprise and of the associated pattern of corrupt activity, one does not necessarily establish the other, but "logically, evidence that proves one of the elements can sometimes prove the other, even though it doesn't necessarily do so." *Id*. at ¶ 10.

In so holding, the Court rejected this court's holding in *Beverly* [2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365] that there was insufficient evidence that the defendants were involved in any type of ongoing

organization, functioning as a continuing unit, with a structure separate and apart from the pattern of corrupt activity. The Supreme Court also, sua sponte, rejected any argument that the conviction was against the manifest weight of the evidence.

Subsequently, the Supreme Court vacated our judgment in *Christian* [*I*] and remanded for us to "consider the evidence of an enterprise in light of" its decision in *Beverly*. *State v. Christian*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888, ¶ 1. * * *

*Christian II* at ¶ 2-8.

{¶ 5} On remand, in light of the Ohio Supreme Court's interpretation of the statutory definition of an "enterprise" for purposes of engaging in a pattern of corrupt activity, as set forth in *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, we held that Christian's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, we reinstated Christian's prior conviction of that offense, but we modified it from a felony of the first degree to a felony of the second degree due to our prior judgment in *Christian I* that the underlying offense was a felony of the fourth degree, rather than a felony of the third degree. Finally, we remanded the matter to the trial court for resentencing on Counts II, III, and V. *Christian II* at ¶ 36-37.

{¶ 6} Thereafter, a hearing was held before the trial court on July 27, 2016, at which Christian was resentenced as follows:

Count I, Insurance Fraud (Fourth Degree Felony): 18 months;

Count II, Insurance Fraud (Reduced to a Fourth Degree Felony): 12 months;

Count III, Making False Alarms (Reduced to a Misdemeanor of the First Degree): 180 days;

Count IV, Making False Alarms (Fifth Degree Felony): 12 months; and

Count V: Engaging in a Pattern of Corrupt Activity (Reduced to a Second Degree Felony): 8 years.

The trial court ordered Count I to be served consecutively to Count IV, Count II to be served consecutively to Count V, Count III to be served concurrently to Counts I, II, IV, and V; and Counts II and V to be served concurrently with Counts I and IV, for an aggregate sentence of nine years. Significantly, nine years in prison is the same sentence Christian received when she was originally sentenced on June 19, 2012.

{¶ 7} On July 27, 2016, the trial court issued a "Supplemental Termination Entry," which consisted of a form on which the court simply checked off its reasons for ordering consecutive prison terms pursuant to R.C. 2929.14(C)(4). On August 5, 2016, the trial court issued a judgment entry in which it outlined the terms of Christian's resentencing. However, the judgment entry did not contain language pursuant to R.C. 2929.14(C)(4) regarding its findings in support of the imposition of consecutive sentences.[1]

{¶ 8} Christian appealed her resentencing, raising a single assignment of error: that the trial court abused its discretion during resentencing when, without any new facts having been presented, it made the R.C. 2929.14(C)(4) findings pertaining to the imposition of consecutive sentences, which it had not made during Christian's original

---

[1] We note that on September 29, 2016, well after Christian filed her notice of appeal with this Court, the trial court apparently became aware of the omission and issued a nunc pro tunc judgment entry wherein it included language pursuant to R.C. 2929.14(C)(4) explaining it findings in support of consecutive sentences.

sentencing hearing. Specifically, Christian contended that the trial court erred when it ordered Count II to run consecutively to Count V, because no new facts had been presented at Christian's resentencing hearing that warranted the trial court's divergence from its initial order, which imposed Count II concurrently with Count V.[2]

{¶ 9} Ultimately, we declined to address Christian's assignment of error and instead reversed the trial court's resentencing judgment based upon our holding that, by the time that Christian was resentenced in 2016, she had already served the original prison terms that had been imposed for Counts I through IV. *Christian III*, 99 N.E.3d 887, 2017-Ohio-8249, at ¶ 15, 28-30. Applying the Ohio Supreme Court's holding in *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, and expressing double-jeopardy concerns, we held that, because a trial court may not resentence a defendant for an offense once that defendant has completed the sanction that had been attached to that finding of guilt, Christian could not be resentenced on Count II, regardless of the fact that she still had not completed her sentence for Count V. *Id.* at ¶ 15-16, 28. Accordingly, we reversed and remanded the matter with an instruction for the trial court to resentence Christian on Count II to reflect that it was served concurrently with Count V, and thus the aggregate term was eight years.

{¶ 10} The State appealed our decision in *Christian III*, and on March 10, 2020, the Ohio Supreme Court overruled *Christian III*. *State v. Christian*, Ohio Slip Opinion No. 2020-Ohio-828, __ N.E.3d __. The Supreme Court held that a defendant may be resentenced "on a specific count after the sentence related to that count has been vacated

---

[2] On August 1, 2017, we issued an order to the parties to be prepared to address at oral argument (on Tuesday, August 22, 2017) the issue of whether Christian had completed her sentence on Count II prior to her resentencing on July 27, 2016.

on direct appeal," notwithstanding that the defendant has already "been confined for the length of the original term that had been attached to that count." *Id.* at ¶ 1. The Supreme Court reasoned that, "because a defendant in these circumstances has no expectation of finality in the original sentence once it has been vacated on direct appeal, the trial court has the ability to resentence the defendant de novo." *Id.* In *Christian*, the individual sentences on several counts were vacated in the direct appeal. *Id.* at ¶ 1, 5; *see also Christian I*. Because those sentences had been vacated, the Supreme Court held that the trial court had the authority to resentence the defendant de novo on those counts. *Id.* at ¶ 18, 29. Accordingly, it reversed our decision in *Christian III* and remanded the matter to this court with instructions that we address Christian's assignment of error, which we had previously found to be moot.

{¶ 11} Christian's appeal is now properly before this Court.

{¶ 12} Christian's sole assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN RESENTENCING CHRISTIAN WHEN IT MADE NEW FACTUAL FINDINGS UPON RESENTENCING THAT CONTRADICTED THOSE MADE AT THE ORIGINAL SENTENCING, AND WHEN NO NEW FACTS HAD BEEN PRESENTED.

{¶ 13} In her assignment, Christian contends that the trial court abused its discretion at her resentencing hearing by deciding to impose the sentence for Count II consecutively to her sentence for Count V. Specifically, Christian argues that the trial court improperly reconsidered its initial decision to run those sentences concurrently without any new factual basis for doing so. Upon review, we conclude that the trial court

improperly recreated the sentence it previously imposed under the old, defunct law, utilizing the same facts to justify the nine-year sentence as it did at the original sentencing.

{¶ 14} As previously stated, the primary charge against Christian was engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which was charged in Count V of her indictment. Christian's lower-level predicate offenses, charged in Counts I through IV of her indictment, were two counts of insurance fraud in violation of R.C. 2913.47(B)(1) and two counts of making false alarms in violation of R.C. 2917.32(A)(3). Pursuant to the law in effect at the time of Christian's indictment — which was prior to the legislature's enactment of H.B. 86, effective September 30, 2011 — Count V was a first-degree felony, for which the trial court could impose a prison sentence of up to ten years. *See* former R.C. 2929.14(A)(1) (providing for a maximum prison term of ten years for a first-degree felony). H.B. 86 went into effect prior to Christian's original sentencing hearing. The new law had the effect of reducing the felony levels and resulting sanctions for various offenses, including the offenses identified in Counts II, III, and V of Christian's indictment. Significantly, Count V became a second-degree felony, which allowed for the imposition of a prison sentence of no more than eight years. R.C. 2923.32(B)(1); former R.C. 2929.14(A)(2).

{¶ 15} As stated above, in *Christian I*, we reversed Christian's conviction for engaging in a pattern of corrupt activity. Additionally, we modified Christian's convictions for insurance fraud (Count II) and making false alarms (Count III) to reflect lower degrees of the offenses pursuant to H.B. 86. Thereafter, we remanded the matter to the trial court for resentencing on Counts II and III. The State appealed our decision to the Ohio Supreme Court, which reversed and remanded on the basis of its decision in *State v.*

*Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. *Christian*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888.

{¶ 16} At the resentencing hearing held on July 27, 2016, the following exchange occurred:

Defense Counsel: Very briefly, Your Honor. I have only one argument to make for purposes of Ms. Christian's resentencing and that's this. The Court found in Round one of sentencing that the public would be adequately protected by the concurrent running of Ms. Christian's sentence on her RICO conviction (Count II) to that of the underlying four predicate crimes. And so if the Court were now say, to have a mind to impose the same nine-year sentence, it would now have to find that consecutive sentences were necessary to protect the public with respect to the RICO count and the four predicate crimes. The problem with that in our view, of course, is that the facts haven't changed. The facts of [sic] are the same as they always have been.

So I would simply ask the Court to adhere to its initial finding that concurrent sentences were adequate to protect the public with respect to the RICO count and the underlying four predicate crimes.

* * *

Christian: I would like to apologize to the Court and the community. I'm sorry for the time and pain my situation has caused. And also many that are dear to me, my friends, my family, my friends and my former employees I also considered family. I realize that I will probably never be

able to repair the damage completely.

Four years ago, I didn't realize what a traumatic impact my situation had. It disturbs me how deeply how many people were affected and suffered. It has consumed me and is haunting me every day.

\* \* \*

Currently, I have a secure and safe place to stay and financial help. Over time, that may change. Therefore, I'm asking the Court to please give me a chance to become a productive and law-abiding citizen so I can start paying off my fines and restitution and so that I can be there for my son and my 86-year-old mother and try to repair some of the harm to try to turn some of this tragedy into something positive.

Your Honor, Your Honor, I implore you to please give me that chance. I'm grateful for your consideration.

Trial Court: Okay. [Defense counsel], you mentioned something about when I sentenced Ms. Christian approximately four years ago, finding concurrent sentences were appropriate. *Actually, what I decided four years ago, what I determined four years ago, is that nine years was an appropriate sentence under the facts of this case.*

*And in looking at it again and calling back memories of the case, I believe nine years is the appropriate number and it's a number I can come to within the ranges of what is before me.*

(Emphasis added.) Resentencing Hearing, p. 2-4.

**{¶ 17}** The trial court went on to question the credibility of Christian's claims that

she had bettered herself in the four years since the original sentencing. The trial court then identified the same factors that led to the trial court's original sentence of nine years, stating "[t]hat's why I gave you the nine-year sentence then. You had no regard for other people's lives or well-being. *That's why I'm giving you the nine-year sentence again.*" (Emphasis added.) *Id.* at p. 6.

{¶ 18} Despite being faced with identical facts and providing an identical analysis, the trial court changed its previous decision to impose less than the maximum sentence for Count V and found that Christian should receive the maximum possible punishment allowable under former R.C. 2929.14(A)(2) of eight years in prison.[3] The trial court also decided that concurrent sentences were no longer appropriate for Counts II and V, and instead imposed those sentences consecutively to each other, resulting in an aggregate sentence of nine years.

{¶ 19} Significantly, the trial court failed to identify any unfavorable conduct by Christian in the intervening four years since the original nine-year sentence was imposed to support its decision to essentially reinstate the identical prison sentence. In a de novo resentencing hearing, a trial court should certainly be able to reconsider the concurrent and/or consecutive natures of a defendant's sentences based upon any new factual circumstances that have developed *since* the prior sentencing hearing. On this record, however, the only change that was pertinent to Christian's prison terms was the fact that the legislature had decided that lesser prison terms should apply to her offenses.

{¶ 20} In order to justify the trial court's conclusion that Christian's convictions for

---

[3] We note that Christian's original sentence for Count V was nine years, one year less than the maximum sentence of ten years at the time her original sentence was imposed.

Counts II and V required consecutive rather than concurrent sentences pursuant to R.C. 2929.14(C)(4), there needed to be something more than the legislature's choice to assign a lesser sanction to those offenses. However, the only new evidence at the resentencing hearing was Christian's explanation of her efforts to better herself and her expression of remorse. Notably, the trial court doubted Christian's credibility and found her claims of remorse to have no mitigating effect, which was well within the trial court's discretion. More importantly, however, the trial court concluded that nothing in Christian's factual circumstances had changed.

{¶ 21} "It has long been recognized in this state that the General Assembly has the plenary power to prescribe crimes and fix penalties." *State v. Morris*, 55 Ohio St.2d 101, 112, 378 N.E.2d 708 (1978). A trial court has no inherent power to sentence, and instead must impose penalties that the legislature has provided. *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 10. It is well within the legislature's purview to exercise its power by reducing felony levels and prison terms. *Morris* at 112. Here, the legislature's decision to change the penalties with respect to the charged offenses did not constitute a change in circumstance that supported the trial court's decision to impose consecutive sentences, when the trial court clearly acknowledged that that nothing in Christian's factual circumstances had changed since the original sentence was imposed.

{¶ 22} If the "record does not support the sentencing court's findings under * * * division (B)(2)(e) or (C)(4) of section 2929.14 * * * of the Revised Code," R.C. 2953.08(G)(2)(a), then an appellate court must take corrective action by either modifying or vacating and remanding the matter for resentencing. R.C. 2953.08(G)(2). With an

admission by the trial court that there were no new facts to support its decision to impose the sentence from Count II consecutively with the sentence from Count V under R.C. 2929.14(C)(4), the court's findings were unsupported by the record.

**{¶ 23}** Christian's assignment of error is sustained.

**{¶ 24}** Christian's assignment of error having been sustained, the trial court's judgment is reversed, and this matter is remanded for proceedings consistent with this opinion.

FROELICH, J., concurs.

TUCKER, P.J., dissents:

**{¶ 25}** Since a de novo resentencing allows a trial court to resentence with a "clean slate," I respectfully dissent.

**{¶ 26}** On remand for resentencing, a trial court must conduct a de novo resentencing hearing on the relevant counts in accordance with R.C. 2929.19. *State v. Wilson*, 124 Ohio St.3d 214, 2011-Ohio-2669, 95 N.E.2d 381, ¶ 15. "During a de novo resentencing * * * 'the trial court is free to impose the identical sentence that was originally imposed, or a greater or lesser sentence within its discretion * * *. ' " *State v. Jackson*, 8th Dist. Cuyahoga No. 92365, 2009-Ohio-4995, ¶ 9, quoting *State v. Cook*, 8th Dist. Cuyahoga No. 91487, 2008-Ohio-4246, ¶ 10.

**{¶ 27}** In a similar vein, it is "recogniz[ed] that a trial court has the discretion, within the statutory framework, to impose a consecutive sentence as part of a resentencing hearing even if it imposed a concurrent sentence previously." *State v. D.H.*, 2019-Ohio-1017, 133 N.E.3d 922, ¶ 28 (10th Dist.), citing *State v. Busby*, 10th Dist. Franklin No.

09AP-1119, 2010-Ohio-4516, ¶ 6; *State v. O'Neill*, 6th Dist. Wood No. WD-12-002, 2013-Ohio-50, ¶ 13-16; *State v. Mockbee*, 2014-Ohio-4493, 20 N.E.3d 1127, ¶ 28 (4th Dist.), *superseded on other grounds by State v. Mockbee*, 4th Dist. Scioto No. 14CA3601, 2015-Ohio-3469;  *State v. Wells*, 11th Dist. Ashtabula No. 2013-A-14, 2013-Ohio-5821, ¶ 33-36; *State v. Huber*, 8th Dist. Cuyahoga No. 98206, 2012-Ohio-6139, ¶ 24, *superseded by statute on other grounds as stated in State v. Davis*, 8th Dist. Cuyahoga No. 104574, 2018-Ohio-1147; *State v. Mitchell*, 2d Dist. Montgomery No. 21020, 2006-Ohio-1602, ¶ 11.[4]

{¶ 28} *State v. D.H.* is instructive to the present analysis.   D.H. was convicted by a jury on two counts of rape.   The trial court sentenced D.H. to a ten-year prison term on the rape in Count 2 and to a four-year prison term on the rape in Count 3; these sentences were ordered to be served concurrently.   On appeal, the Tenth District determined that the evidence was not sufficient to support the Count 2 rape conviction, but that the evidence was sufficient to support a conviction for gross sexual imposition.   Accordingly, Count 2 was modified to a gross sexual imposition conviction, and the matter was remanded for resentencing on Count 2.   The trial court sentenced D.H. to 60 months on Count 2 and ordered that this sentence be served consecutively to Count 3, for an aggregate sentence of nine years.

---

[4] Our decision in *State v. Mitchell,* which remanded a sentencing decision based upon *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, *abrogated by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), is not directly relevant to the current analysis.   In Mitchell, the trial court had previously imposed a consecutive sentence, but we noted, based upon the *Foster* decision, that "while Mitchell may argue for concurrent sentences on remand, nothing prevents the trial court from imposing consecutive sentences with a lesser, the same, or a greater aggregate sentence." *Mitchell* at ¶ 11.

**{¶ 29}** On appeal, the appellate court first rejected D.H.'s contention that the consecutive sentence was contrary to law because it constituted prohibited sentencing packaging. The court concluded its sentence packaging discussion as follows:

> To be clear, on remand for de novo resentencing, the trial court is limited by the statutory scheme, which requires that the court make certain explicit findings before imposing a consecutive sentence, and prohibitions from acting vindictively or otherwise contrary to law. The trial court is not, however, limited by its original sentencing decision. To suggest that there is an inference that a trial court acts improperly if it varies from what it imposed originally would nullify the requirement to conduct a de novo resentencing hearing and undermine the court's responsibility to engage in a full analysis pursuant to the sentencing statutes.

> Plainly, there is no clear and convincing evidence here that the trial court acted contrary to law by employing the sentencing package doctrine when it resentenced appellant. On remand, the trial court was required to hold a de novo hearing to resentence appellant on Count 2 of the indictment, which included making a de novo determination about whether the sentence on Count 2 of the indictment should run concurrently or consecutively to the sentence previously imposed on Count 3 of the indictment.

*D.H.* at ¶ 29-30.

**{¶ 30}** The Tenth District then engaged in an analysis of the consecutive sentence noting that the trial court made the required R.C. 2929.14(C)(4) findings; it then affirmed

the consecutive sentence based upon the trial court's "appropriate [R.C. 2929.14(C)(4)] analysis * * *. " *Id.* at ¶ 36. Notably, there is nothing in *D.H.* to suggest that the trial court's imposition of the consecutive sentence was based upon anything that had occurred since the original imposition of the concurrent sentence. To the contrary, it is clear that the Tenth District appropriately concluded that a de novo resentencing allows a trial court to take a new, fresh look at the sentencing landscape and then to resentence accordingly.

{¶ 31} In short, I disagree with the majority opinion's conclusion that "in a de novo resentencing hearing, a trial court should certainly be able to reconsider the concurrent and consecutive nature of a defendant's sentence based upon any new factual circumstances that have developed *since* the prior sentencing hearing." (Emphasis sic.) This approach, I suggest, is not consistent with de novo resentencing and runs contrary to the case law. Upon this basis, I dissent.[5]

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Brock A. Schoenlein
Hon. Barbara P. Gorman

---

[5] Christian does not argue that the trial court's R.C. 2929.14(C)(4) consecutive sentence findings are clearly and convincingly not supported by the record. *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169; R.C. 2953.08(G)(2)(a). But she does suggest, at least implicitly, that the trial court engaged in improper sentence packaging. If so, the consecutive sentence would be contrary to law. R.C. 2953.08(G)(2)(b). Based upon the trial court's comments set forth in the majority opinion, there is an argument that we could clearly and convincingly find that the trial court engaged in sentence packaging. But since we have not asked the parties to brief this issue, I will not further comment.